Good morning, your honors, and may it please the court. My name is Richard Salzman. I represent Fay Cole. Your honors, this was a typical employment discrimination case that should have been left for a jury to resolve. Each side had a story to tell, backed by competent evidence. On the plaintiff's side, on January 8, 2013, Fay Cole lodged a formal complaint of age discrimination with the Family Dollar's headquarters. The complaint was sent to the district manager, Marshall Walker, and the next day, January 9, Walker and the store manager, Tiffany Thompson, met with Fay Cole to talk about her complaint. Ms. Cole alleged that she had been receiving discriminatory comments by Ms. Thompson and that her hours had been reassigned to a younger, recently hired employee. Marshall Walker chastised Ms. Cole for complaining, saying you shouldn't make allegations like that about your boss, and 12 days later, Ms. Walker and Ms. Thompson fired Fay Cole. The explanation for firing Ms. Cole was absences. The records provided by Family Dollar show that in firing Ms. Cole over two alleged absences, absences which she disputed, Family Dollar treated Ms. Cole differently and far worse than several younger employees. Can I ask you about that? Yes, Judge Rushing. I do think that is important evidence, and I've been trying to find the comparators in the record, and you're more experienced with the record than I am, so it looks like she was fired for two no-call, no-show, right, where it's different from unexcused. Unexcused is where you call, but you weren't given permission ahead of time. Where in the record, or is it in the record, can I find whether these other folks were no-call, no-show absences versus unexcused absences? Do you understand my question? I do, Your Honor, and it's hard to find, and the answer is because Family Dollar provided us records showing the dates of absences, and several employees had back-to-back absences, and the store manager, Ms. Thompson, testified that she couldn't remember the circumstances of any of the absences for the other employees. So the records we have don't, they just don't indicate if they're no-call, no-shows. They don't answer that question, Your Honor. What they do answer, though, is that there were many absences, unexcused absences, employees who were clearly similarly situated, which is really the key question, as this court asked in Lange in the FedEx case, are the employees similarly situated? Here, they worked in the same store, under the same district manager, and same store manager, at the same time as Fay-Cole, under the same rules, attendance rules, and no-call, no-show, is that necessary to show that they are similarly situated? It's probably different to the manager, whether you just don't show up to work, or whether you call and say, I'm sick today, I'm not going to be able to come. Is that an essential ingredient for the comparator? I don't think it's an essential ingredient, Your Honor, because Family Dollar only came up with the no-call, no-show explanation, that particular spin on the explanation, very late in the day in the litigation, in front of the EEOC, and in their interrogatory answers when asked directly, why did they fire Fay-Cole? It's because they said she had many absences. And they tried to say, well, 26, or excuse me, it's 22 unexcused absences. Well, we've introduced evidence that there were employees in the same store who had more than 40 unexcused absences, and 15 under Tiffany Thompson, and 48 under Marsha Walker, and nothing happened to them. So, you're right that there's just simply not evidence in the record, because Tiffany Thompson said, I don't remember any of the circumstances of any of these people. But on this record, a jury could find that it's only after Ms. Cole complains about age discrimination that these managers care at all about attendance, according to their own 30B6 designee. There's not a memorandum of counseling, there's not a notation in the record of any employee at the store of any concerns about attendance, including Ms. Cole. Including Ms. Cole, until after she complains about age discrimination, 12 days before she's that that was retaliatory, or age discriminatory, but only the jury can draw that inference. There's some disagreement about the number of absences, but the question I have is, what makes this ageism? Yes, sir. And reading both sets of briefs, the opposing briefs, say that you're being very selective and overlooking the fact that there were the employees fired for absenteeism in the year that Thompson spent as manager of the Capitol Heights store, that nine were under the age of 40, and three, including Ms. Cole, were over the age of 40. So there were a lot of people, going to this whole question of comparators, there were a lot of people under the age of 40 that were dismissed for absenteeism, and the district court looked at all employees in this particular store, and found that Thompson's age was over 40, and that Thompson had fired younger workers with fewer absences. Well, that was from the, that's what the district court... Definitely what she found, Your Honor, if I may address that. And did not fire older workers with more absences than her. In other words, you may disagree about the firings and everything, but how did Thompson get fired, and how does it all add up to ageism, given the fact that younger workers are being fired with fewer absences, and older workers are not being fired with more absences? Yes, Your Honor, if I could address that. So all of that was highly disputed. So the entirety of the record evidence that Judge Zini's relied upon was an affidavit by Ms. Neely, who is a human resources vice president, who had no personal knowledge about any of the circumstances at the store, and did not produce or point to any of the records about these supposedly younger employees being fired. How do you say the district court drew its findings out of thin air? She drew her findings out of an affidavit from Ms. Neely that simply said there were 12 employees. She does not provide the names, she does not provide the number of absences, she does not provide the ages. Family Dollar, back in 2013, told the EEOC, and this is at the time of this recording, at page 851 of the appendix, that they had fired four employees at the store, not 12. Tiffany Thompson, when asked in her deposition how many employees at that store she had fired for absenteeism, said one, fake whole. She said that she had fired four employees over the entirety of her career at Family Dollar over many stores, so the evidence that the district court relied upon to say that, oh, they fire many, 12 younger employees, is thoroughly disputed, and the entirety of that evidence came from Natalie Neely's declaration. What makes this age is two key pieces of information. Testimony from Ms. Cole about the statements that Tiffany Thompson was making to her, which under this court's authority should be considered as direct evidence. Ms. Thompson said to her, within weeks of the time of the firing, that she wanted to get rid of these Ms. Cole didn't raise that in her HR complaint initially. Well, again, that's, again, disputed. Or the EEOC charge. So Judge Wilkinson, when she filed her EEOC charge, she had not been fired. The first time that she filed the EEOC charge, she was only complaining about the fact that they had been giving her hours to a younger employee, and then they fired her and the charge got amended to include the firing. She added the ageist comments, because she never raised it before. Well, Your Honor, that goes to the credibility, and that is a perfectly fine argument for them to make to a jury at trial. But her testimony under oath that these statements were made is competent evidence, and she told the EEOC Well, then why isn't the affidavit that the Family Dollar manager submitted competent evidence? That's under oath. It is competent evidence. It's just not undisputed evidence, and that's the issue. Well, on the absenteeism, she hasn't backed off. Thompson has consistently said that there were no-call, no-show absences on January 18th and January 19th. One of the things, the absenteeism, if you look at it, so often in these cases, the position of middle managers in our economy is just completely overlooked. The middle manager who runs a branch bank or a branch of Lowe's department store or a Wendy's restaurant or whatever, and particularly a store like Family Dollar, which depends upon high-volume sales and good customer interactions, and no-call, no-shows, they can tear a branch or a particular store, a particular unit, they can tear it apart and put yourself in the shoes of a middle manager who arrives at, let's say, a branch department of Lowe's. And all of a sudden, someone without calling doesn't show. It just gets the day off to a terrible start. And if you leave the problem unaddressed, what happens is that absenteeism becomes the morale of the place suffers and says, oh, so-and-so doesn't show after the Super Bowl and so-and-so doesn't show and this doesn't show. But the policy around here is rather lax. And then you have a sagging morale on the grounds that the absenteeism is something that will be dealt with more or less tolerably. Now, she cracked down on it. And I know you think that particular absenteeism is disputed, but it ruins a middle manager's life. And it can also turn a business depending on high-volume and warm, good, dependable customer service and customer interaction. It creates havoc. And you say, oh, that's all a jury question, Your Honor. You can bring that up before a jury. But you have to have something to bring. So the question of whether she was scheduled is highly disputed. And the records support our client, not theirs. Where in the record is the support for the idea that she picked up her schedule on Thursday? You cite something in your brief, but it doesn't say that. Your Honor, the testimony from both Ms. Thompson and Ms. Cole, and I apologize, I don't have the page number in my notes, but both consistently testified that the practice was that the schedule was posted on Thursday, the Thursday before. No, Ms. Cole testifies at 2.07 of the JA that her routine was to get the schedule. There was a Saturday 7 a.m. meeting she had to go to. She had a Saturday 7 a.m. meeting as well, Your Honor, that she would go to. But that the store, that the manager's practice was to post it on Thursdays. If she was scheduled on a Thursday, she would pick it up on Thursday. If you could find that record site and maybe let me know in your rebuttal. I will. I will. Thank you, Your Honor. But in any event, the records show that she was not scheduled for either the 18th or the 19th. Now, the audit report shows that Ms. Thompson on the 11th, two days after their meeting to talk about the complaint of discrimination, adds those shifts. But Ms. Thompson agrees she didn't call or tell. She probably added those shifts because at that meeting, Ms. Cole was complaining that her hours were being reduced. So they gave her more hours and she's still complaining. Well, Your Honor, it's not that she's complaining about getting more hours. She's complaining about being fired in her belief. Well, if they wanted to fire her, why did they bring her back after, you know, she'd had a month leave and they brought her back. She wanted more hours. They gave her more hours. And you're saying, well, that they didn't accommodate. You know, to hear your rendition of all of this, you're thinking Ms. Cole never had a problem with absenteeism. And, you know, the problem may be greater or lesser, but the thought that she wasn't creating problems with no-call, no-shows, is hard to believe when you look at this record as a whole. And you have a very good district judge who examined this record in some detail and concluded that she was repeatedly absent. And honestly, you know, small businesses can't deal with that. And branch managers can't, you know, can't deal with that. And it's just hard to believe, looking at this, that there's an issue of tribal fact as to whether this was ageism or absenteeism. It's not discrimination, is it? It's absenteeism that's at the heart of the problem. Well, respectfully, Your Honor, I would like to address that. And respectfully, it absolutely, from our view, is ageism. When you have a manager who— Why is he retaining older workers and dismissing younger workers? That's not what the record shows, respectfully, Your Honor. The record shows that the three employees that Ms. Thompson did fire for absenteeism, Ms. Cole, a gentleman whose initials are WB, and a woman whose initials are CDD, I believe, were all either 50 or over 50 or very close to 50. And in a circumstance in which she is not firing many younger employees who racked up 40 or more absences. But she fired lots of younger employees. That is disputed, Your Honor. But all the facts on your side are undisputed, right? No, I'm not contending that they're undisputed. Our point is that the very fact that they are disputed means that this case should have been resolved by a jury. I know that I'm way over my time. I would have liked to have saved some time for a rebuttal, Your Honor. But I did want to answer your question as well. That sounds just fine. Thank you, Your Honor. Ms. Jurado. Good morning, Your Honors. May it please the Court. Denise Jurado on behalf of Family Dollar Stores of Maryland, who I will refer to as Family Dollar. Your Honor, Judge Wilkinson, you hit the nail on the head. Family Dollar terminated Ms. Kohl after she made it clear that she could not be bothered to show up to work during Family Dollar's busiest time of the year, the holiday season. Ms. Kohl has not presented any evidence on the motion for summary judgment record that could plausibly show that Family Dollar's non-discriminatory and non-retaliatory reason was pretextual. Judge Cini's properly granted summary judgment in this case. I'd like to touch on Mr. Salzman's discussion of the schedule first. Judge Rushing, you asked where in the record was it that Ms. Kohl received it on a Thursday. It's not in the record. What the record shows is that the schedule that Ms. Kohl allegedly received was a draft schedule that had somehow been printed, unfinalized from a manager's computer. The testimony as to that point says, the save button is still there. That is at JA 113 and then 119 to 160 is the testimony on that. There is some grand conspiracy theory that Ms. Kohl was somehow scheduled for January 18th and January 19th, and it's a post hoc explanation as to why Family Dollar terminated her. The fact remains that Judge Thacker, as you recognize, she complained on January 9th. She was then scheduled for 21 hours that week. She was given more hours, but she just didn't bother to show up. She worked January 16th, 2013. She got the schedule. She knew the schedule. She knew she was supposed to be there January 16th. She would have seen the schedule on January 16th, showing her scheduled for January 18th and 19th. Family Dollar, Ms. Thompson, had a good faith belief that she was scheduled. She didn't show up on January 18th. No call, not to a friend. What about opposing counsel's argument? He says that the affidavit from, I think it's Ms. Neely, saying that 12 people were fired and that that is disputed. It's not, Your Honor. It's supported by the record evidence in JA 544 to 555. That is the absences and a list of absences. And then if you compare it to the termination and the printouts from the personnel files, you'll see that Ms. Thompson, and again, counsel is actually glossing over the applicable time period. It's Judge Rushing, you were speaking about comparators. The applicable time period is when Ms. Thompson, who owns the decision to terminate Ms. Cole, was the store manager of 6590. So that would be November 4th, 2012 to October 19th, 2013. If you look at that time period, there were 12 employees terminated for absenteeism. Nine were under 40. Three were over 40. Ms. Cole was one of them. Counsel was earlier referring to an employee that had 44 absences and was never terminated for that absenteeism. That's, again, glossing over the applicable comparator time frame. That employee he's referring to is Daisha Cave. During that time period, she had two unexcused absences, not 44. And then they also refer to Keon Coleman, who's also in the 40s. Again, that's his entire history with Family Dollar. During Ms. Thompson's time period, two absences. And appellant wasn't replaced with a younger employee, was she? No, Your Honor. Shannon Hill was actually hired December 20th, 2012, prior to Ms. Cole's termination. Family Dollar's Judge Wilkinson, as you noted, we thrive on lots of high inventory, high volume of sales. We really can't say that this person was hired to replace somebody else. It was a month prior. Yes, it was, Your Honor. We don't really hire someone to replace someone. It's a very busy time in and out with employees, to be honest. Mr. Salzman also raised the issue of the EEOC position statement and that Ms. Thompson, Family Dollar's reasoning is somehow shifting. And as Judge Wilkinson noted, Ms. Thompson has never changed her testimony. The position statement, Your Honors, was written by someone in the legal department, relying on papers. Ms. Thompson wasn't available to consult with. Ms. Walker wasn't available to consult with. It was written by someone on the legal staff. Ms. Thompson's testimony as to this issue has never wavered. Ms. Cole was terminated for not showing up, not calling anyone, and even on January 18th, when Ms. Thompson called Ms. Cole to see if she would be reporting to work and also mentioned the January 19th date, Ms. Cole didn't call back. And as Judge Wilkinson, as you stated, this wasn't her first time she was ever absent. She was absent for a No Call No Show earlier on December 30th, 2012, and January 2nd, 2013. She claimed she was ill, but under oath during her deposition, she admitted Well, were the absences after New Year's parties or were they after the, I guess, no, it's interesting to me that Super Bowl Monday has the highest rate of workplace absenteeism in the entire year, but it seems that the absences, at least the contention is that the absences occur after New Year's, after New Year's Eve and after the Super Bowl. She admitted it, didn't she? She admitted it in her deposition that her absences, her No Call No Show, on December 30th when she said she was ill was actually due to hosting a New Year's Eve party for her colleagues who all attended. And again, Judge Wilkinson, as you also noted earlier, this was not, those four absences, set those aside. She also had absences early in December. She had six absences in six weeks. The fourth quarter of the year is Family Dollar's busiest time of the year. It's, under the summary judgment standard, we obviously and do give the benefit of the inferences to the non-prevailing party. But when you're reviewing a grant of summary judgment, it's also fair, it seems to me, keeping in mind that the review is de novo and that the inferences go to the benefit of the non-prevailing party. But it's also fair in a review of summary judgment to look at whether the district judge just brushed the case off or whether the district judge was conscientiously dealt with it and really understood the record, got into it. So Judge Zenes, it seemed to me that she had really gotten into it, the whole, and looked at the records of absenteeism and a lot. And regardless of this date or that date, the overall picture that she found after looking at this in some detail was that there was a pervasive record of absenteeism, and she used the words repeatedly absent. So we might have a dispute over one date or another, but as to the overall picture of no call, no show, and absenteeism, it's hard to see that there's a dispute. Yes, Your Honor, and this is especially true where Family Dollars 30B6 witness testified the one absence is enough for termination. There's no particular threshold. One absence, one no call, no show, one unexcused absence is enough. But the point is the district judge, and I come back to this review of summary judgment, the district judge did not just brush this off. No, Your Honor, and that couldn't be clearer. And, for example, a claim that's not even here before, when Ms. Cole asked for tolling of statute of limitations, she dug into the facts. When it looked at, she didn't just rely on Natalie Neely's affidavit. She dug into the time records. She looked at the JA, the evidence at JA 544 to 555. She cited to that. She dug in and compared unexcused absences, and she compared it during the relevant time frame, again, during Ms. Thompson's tenure as a store manager of 65. It meant it would make a difference. Yes, Your Honor. It wasn't some glossing over. She very much considered it. It wasn't as opposing counsel states just accepting Ms. Neely's affidavit on the surface. She did look at the records. She cited to names. She took a look at every absence. And, Your Honors, I'd also like to address Mr. Salzman's briefing of the direct evidence in this case. This is not a direct evidence case. Mr. Salzman makes much of the allegations and the uncorroborated testimony from Ms. Cole that Ms. Thompson made aegis comments towards Ms. Cole, and, therefore, there's direct evidence of discrimination. Ms. Cole's daughter didn't recall anything about the statement or about the statement that had been made. As I understand it, Ms. Cole did not mention this. I think Judge Thacker alluded to this. Didn't mention this in the HR complaint or in the EEOC charge. And if this was such a powerful piece of evidence, you'd think her daughter would have had some recollection of it and heard discussion of it, or that it would have been mentioned at some point along the agency, along the company and agency trail. Precisely. The first time she ever mentioned it, Your Honor, was at her deposition in this case. With respect to the retaliation piece, Mr. Salzman alleges, he makes much of the timeline, that Ms. Cole first contacted Human Resources at Family Dollar on January 8th, 2013. Ms. Walker met with Ms. Cole and Ms. Thompson on January 9th, 2013, and she was terminated on January 21st. Causal connection does not equate to retaliation. Temporal proximity does not equate to retaliation, especially in this case, again, as we all discussed, that on January, Judge Thacker, you noted this, on January 10th, January 11th, her hours increased. Twenty-one hours were assigned right after that meeting. It was on Ms. Cole to show up for her shifts, and she decided it just simply wasn't important enough. She cannot show that our legitimate, non-retaliatory reason was pretextual. The evidence simply is not there. Your argument is really almost the same for the retaliation claim as it is for the underlying merits claim, that what happened here was not due to discrimination but due to absenteeism. Yes, Your Honor, that's precise. And that carries through. That carries through to both the discrimination and the retaliation piece. And, Your Honors, would you like me to address the failure to accommodate claim that was not raised by Mr. Salzman? I'd be happy to address it. I'll ask my colleagues if they... We're fine, thank you. Thank you, Your Honors. And, again, we would submit on the brief that Judge Sienese did correctly enter summary judgment. Thank you. Mr. Salzman, happy to hear from you. Thank you very much. Judge Rushing, in their interrogatory answers, which are at page 507, Family Dollar said that store managers were expected to post schedules within the store each Thursday for the following week's shifts. I believe Ms. Cole testified, I did not find the exact site, but that she normally would pick up the schedule on Thursday. She also would go to the Saturday morning meetings where Ms. Thompson would talk about the schedules as well. So there's not a record site for when she would pick it up other than Saturday? I didn't find it during the break, Your Honor. Thank you for looking. Sure. I would like to address the question of whether or not Ms. Cole made up these allegations of ageist remarks. For the first time, I think Ms. Durato said in her deposition, first of all, that is not correct. They were pled specifically in her complaint in this court. And she wrote a letter to the EEOC in rebuttal. In early 2014, and that's at page 575 of the appendix, in which she says when she called human resources at headquarters to talk about her concerns, she called about the cut in hours and harassment. Harassment for a lay person who was not represented at the EEOC at the time certainly involves these types of statements. Her testimony that they occurred is perfectly competent evidence, whether it's corroborated or not. And I disagree, Judge Wilkinson, with your view of what her daughter testified to. Her daughter testified that Ms. Cole told her that she was, you know, this is the kind of treatment that I get from her all the time, Ms. Thompson. And her daughter was there for one particular incident in which her daughter said that they were making nasty derogatory comments about my mom, but she could not remember precisely what was said. It's honest testimony, but it is corroborative, both with respect to the way that they were treating her mother and the fact that her mother reported to her at the time. They were bringing it up for a limited purpose. The daughter did not remember this. That's absolutely true. It would qualify as direct evidence. That's absolutely true, Your Honor, but Ms. Cole does. About ageism. The daughter doesn't mention anything about the age. That's right. That's right. They may well have been talking about her because she didn't show up for work. Well, Judge Thacker, they may or they may not, but her testimony was that they were making nasty derogatory comments about her mom and that her mother had told her about, you know, the poor treatment that she was receiving from Ms. Thompson and the fact that Ms. Cole testified about the comments. It's not about the cruel treatment and everything, but there's an irony here at the heart of the case, and that is that, well, we've mentioned this several times, but she wanted more hours. She was given more hours. She was brought back on the job after an hour, after a month's absence due to some kind of illness, and that doesn't match with these cruel, abusive statement comments. It shows that anything that the company is trying to accommodate her and then to return the accommodation with what appeared to the district court and appears to me as far as I can determine, that it was the company's initiatives and everything were met with, however many may be disputed, but there's clear a number, and to Judge Zenes, it was clearly a pattern, not only of no-shows, but the worst kind of no-shows, which is a no-call no-show, because it deprives the middle manager and the manager of the store the ability to make substitute arrangements or to call another co-worker and say, hey, so-and-so has told me that they can't come in today because they've got a family difficulty, a problem with the child at school, and so she's told me she won't be able to, or he's told me he won't be able to come in today. Because you maybe come in and fill in because we are shorthanded here. And when you don't even call, it deprives your manager of the chance to even get a substitute that can come in and help the operation to move smoothly. You just show up at work and you find you're shorthanded and the day just goes downhill from there. And that's what is so troubling at the heart of this case. And this is in the face of giving her the additional hours and bringing her back after the absence, all which I'm delighted that they did, because I think you try to give people every chance to get back on their feet. But then to repay it in this way is just, it just isn't, it just doesn't sit well. I understand that, Your Honor. I would say, however, that with respect to the no call, no show, that requires that she knew about those hours. And the testimony from Ms. Thompson is that she added the hours on January 11th and did not call Ms. Cole to tell her that those were added. So Ms. Cole did not know that on the 18th and the 19th she was scheduled to work. I would also like to point out that when Ms. Jurado says, well, look at the schedules that she produced, they say save button on them. All of the schedules in the record, and if I may, Your Honor. Counsel, your time is up, and I'm a little reluctant to give you an opportunity to consult the record after your light is on. I apologize. If I could finish this point, Your Honor. You certainly may finish the point. Thank you very much, Your Honor. If you look at all of the schedules that she saved, the actual paper copies of the schedules that she saved at the time, for the week of December 23rd, December 30th, January 1st, and the disputed week, they all have that save button at the top. They all are in the same format, which supports her contention that the schedule that she picked up at the store at the time did not have her working on the 18th and the 19th. I appreciate the time, Your Honor. Thank you very much. We appreciate your argument. Thank you very much. We will come down and greet both of you and then proceed into our final case.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Allison J. Rushing